UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL J. FULKERSON,

                Plaintiff,              Case No. 2:20-cv-11050
                                         Chief Judge Denise Page Hood
v.                              Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 13), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 15), and AFFIRM THE COMMISSIONER'S DECISION

**I.**    **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary

judgment (ECF No. 13), **DENY** Defendant's cross-motion for summary judgment

(ECF No. 15), and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

        Plaintiff, Michael J. Fulkerson, brings this action under 42 U.S.C. §§ 405(g)

and/or 1383(c)(3) for review of a final decision of the Commissioner of Social

Security ("Commissioner") denying his application for disability insurance (DI)

benefits.  This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (ECF No. 13), the

Commissioner's cross-motion for summary judgment (ECF No. 15), Plaintiff's

reply (ECF No. 16), and the administrative record (ECF No. 11).

### A.    Background and Administrative History

Plaintiff filed the DI application at issue in this appeal on February 25, 2019,

alleging that his disability began on October 1, 2015, at the age of 39.  (ECF No.

11, PageID.215.)  In his disability report, he alleged that several conditions

(degenerative disc disease (DDD), irritable bowel syndrome (IBS), post-traumatic

stress disorder (PTSD), panic disorder, generalized anxiety disorder, major

depressive disorder – recurrent moderate, reactive airway disease/asthma,

compression fracture in spine, spinal stenosis, and bulging discs) limit his ability to

work.  (*Id*., PageID.256.)  In August 2019, the Social Security Administration

(SSA) found that Plaintiff was not disabled.  (*Id*., PageID.110-137, 143-161.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").

(ECF No. 11, PageID.162-164.)  On January 21, 2020, ALJ Lawrence E. Blatnik

held a hearing, at which Plaintiff and a vocational expert (VE), Toni McFarland,

testified.  (*Id*., PageID.80-109; *see also id*., PageID.311.)  On the same date,

Plaintiff amended his alleged onset date to October 1, 2017.  (*Id*., PageID.232.)

On February 12, 2020, ALJ Blatnik issued an opinion, which determined that

Plaintiff was not disabled within the meaning of the Social Security Act. (*Id*., PageID.44-67.)

Plaintiff submitted a request for review of the hearing decision. (ECF No. 11, PageID.212-214.) However, on March 31, 2020, the Appeals Council denied Plaintiff's request for review. (*Id*., PageID.38-43.) Thus, ALJ Blatnik's decision became the Commissioner's final decision. Plaintiff timely commenced the instant matter on April 29, 2020.

### B.    Plaintiff's Medical History

The administrative record contains approximately 1,004 pages of medical records, which were available to the ALJ at the time of the February 12, 2020 decision. (ECF No. 11, PageID.312-1315 [Exhibits 1F-23F; *see also id*., PageID.67.) These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2017, the alleged onset date (AOD). (ECF No. 11, PageID.49.) At **Step 2**, the ALJ found that Plaintiff had several severe impairments (DDD of the thoracic and lumbar spine, status post thoracic laminectomy and placement of spinal cord stimulator; osteoarthritis; an anxiety disorder; and PTSD). (*Id*., PageID.49-50.) At **Step 3**, the ALJ found that Plaintiff

3

did not have an impairment or combination of impairments that met or medically

equaled the severity of one of the listed impairments.  (*Id.*, PageID.51-53.)

**Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's

residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC …

> … to perform light work as defined in 20 CFR 404.1567(b).  He can
> lift, carry, push, and pull 20 pounds occasionally and ten pounds
> frequently.  He can sit, stand, and walk[] for six hours; but requires
> the ability to change position every 30 to 45 minutes, for three to five
> minutes at a time [*i.e., exertional limitations*].  He can occasionally
> climb ramps and stairs; never climb ladders, ropes, or scaffolds; and
> occasionally balance, stoop, kneel, crouch, and crawl [*i.e., postural
> limitations*].  He can tolerate occasional exposure to unprotected
> heights and moving mechanical parts [*i.e., environmental limitations*].
> He is able to perform simple, routine, and repetitive tasks; and work in
> a low-stress environment without frequent changes [*i.e.,
> understanding and memory, concentration and persistence, and/or
> adaptation limitations*].

(*Id.*, PageID.53-60.)  At **Step 4**, the ALJ determined that Plaintiff was unable to

perform any past relevant work.  (*Id.*, PageID.60.)  At **Step 5**, considering

Plaintiff's age, education, work experience, and RFC, the ALJ found that there

were jobs that existed in significant numbers in the national economy that Plaintiff

could perform.  (*Id.*, PageID.60-61.)  The ALJ therefore concluded that Plaintiff

had not been under a disability, as defined in the Social Security Act, "from

---

[1] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d
235, 239 (6th Cir. 2002).

October 1, 2015," likely a typographical error for October 1, 2017, through the date of the decision. (*Id*., PageID.61.)

### D. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff contends that the ALJ erred by:  (1) concluding that Plaintiff's PTSD did not meet or equal the criteria of Listing 12.15; (2) failing to consider the full impact of his severe mental impairments – PTSD and anxiety – upon his functional ability when formulating Plaintiff's RFC; and, (3) not considering and addressing the underlying and supporting evidence which supported the VA's finding of 70% disability. (ECF No. 13, PageID.1333-1344; *see also* ECF No. 16.)

6

Plaintiff has the burden of proof on these statements of error. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

### 1. Step 3 – Listing 12.15 ("Trauma- and stressor-related disorders ")

State agency psychological consultant Jerry Csokasy, Ph.D. found that Plaintiff's anxiety and obsessive-compulsive disorders and trauma- and stressor-related disorders were severe. (ECF No. 11, PageID.123.) However, Dr. Csokasy also concluded: (a) "[a] medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above," (*i.e.*, 'A' criteria of the listings); (b) Plaintiff has mild limitations with respect to three of the four functional areas but moderate limitation with respect to concentrating, persisting, or maintaining pace (*i.e.*, 'B' criteria of the listings); and, (c) "[e]vidence does not establish the presence of the 'C Criteria'[,]" (*i.e.*, 'C' criteria of the listings). (*Id.*, PageID.123-124.) Dr. Csokasy supported his conclusion with an additional explanation. (*Id.*, PageID.124.)

At Step 2, the ALJ found that Plaintiff's anxiety disorder and PTSD were severe impairments. (ECF No. 11, PageID.49.) However, at Step 3, the ALJ concluded that "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of Listings 12.06 or 12.15." (*Id.*, PageID.51.) In doing so, the ALJ made 'paragraph B' findings consistent with those of Dr. Csokasy – mild limitations in "understanding,

remembering or applying information," "interacting with others," and "adapting or managing oneself," but moderate limitations "with regard to concentrating, persisting or maintaining pace." (*Id.*, PageID.51-53.)

Listing 12.15 is satisfied by one of two methods – A and B, or A and C. *See* https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm#12_15 (last visited Aug. 20, 2021).

### a.    Listing 12.15A

Plaintiff argues that his PTSD meets and/or equals Listing 12.15. (ECF No. 13, PageID.1333-1336.) The first portion of Listing 12.15 requires "[m]edical documentation of <u>all</u> of the following:

1.    Exposure to actual or threatened death, serious injury, or violence;

2.    Subsequent involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks);

3.    Avoidance of external reminders of the event;

4.    Disturbance in mood and behavior; and

5.    Increases in arousal and reactivity (for example, exaggerated startle response, sleep disturbance).

Listing 12.15A. Apparently in an effort to illustrate Listing 12.15A, Plaintiff contends that he "[u]nquestionably . . . meets the required proof of the existence of a trauma related disorder – PTSD[,]" and cites:

- The December 18, 2013 notes from a telephone session with psychologist Amy L. Karbasi, Psy.D., which Plaintiff claims document a PTSD diagnosis (ECF No. 11, PageID.423-428);

- The June 14, 2016 psychological evaluation by Jessica Charron, Psy.D./L.P., who diagnosed PTSD, panic disorder without agoraphobia, generalized anxiety disorder, and major depressive disorder – recurrent, moderate (*id*., PageID.545-549; *see also id*., PageID.803-832 [Ex. 12F]);

- The December 5, 2016 initial PTSD Disability Benefits Questionnaire (DBQ) completed by compensation and pension psychologist Robert D. Plummer, who opined that Plaintiff had a PTSD diagnosis that conformed to DMS-5 criteria and that his PTSD was "at least as likely as not (more than 50/50 probability) caused by or as a result of or due to service connection at this time (ECF No. 11, PageID.685, 702);

- The May 23, 2017 report of psychiatrist Frank Ochberg, M.D., who opined that Plaintiff "meets every criterion of DSM-5 PTSD and, in addition, the criteria of Persistent Depressive Disorder[,]" (*id*., PageID.448-449 [Ex. 3F]);

- The July 19, 2019 consultative examination (CE) report of social worker John Jeter and Hugh Bray, Ph. D., who diagnosed PTSD with depression and anxiety, generalized anxiety disorder, and panic disorder without agoraphobia (*id*., PageID.1272).

(ECF No. 13, PageID.1335-1336; ECF No. 16, PageID.1373.)  The Commissioner is silent on this subparagraph.  (ECF No. 15, PageID.1355-1356.)  Thus, I assume the Commissioner concedes that Plaintiff's PTSD meets Listing 12.15A.

### b.    Listing 12.15C

Listing 12.15 also requires *either* "[e]xtreme limitation of one, or marked limitation of two," of the four areas of mental functioning (Listing 12.15B) *or* that:

> Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> 1.   Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
>
> 2.   Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

Listing 12.15C.

Perhaps recognizing that the ALJ's assessment of the four functional areas eliminates Listing 12.15B, Plaintiff contends that "the ALJ does not seem to analyze the case" under Listing 12.15C.  (*Id*., PageID.1336.)  As to the "paragraph C" criteria, the ALJ specifically stated:

> The record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life [*i.e., Listing 12.15C2*].  The evidence also fails to demonstrate consistent mental health treatment, psychosocial supports, or need of a highly structured setting to diminish his signs and symptoms of the mental disorders [*i.e., Listing 12.15C1*].  *The claimant has not had mental health treatment consistently for two years.*  In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

(ECF No. 11, PageID.53 (emphasis added).)  Plaintiff contends that this paragraph is conclusory.  (ECF No. 13, PageID.1336.)  However, within the RFC determination, the ALJ observed:  "The claimant participated in therapy from 2016 through June 2018. His treatment notes during this time note unchanged to improving symptoms."  (ECF No. 11, PageID.54 (citing 4F, 7F, 12F, 19F).)  Thereafter, he similarly notes:  "He is no longer in counseling, but his symptoms were noted to be unchanged to improving when he was participating."  (*Id.*, PageID.58 (citing 4F, 7F, 12F, 19F).)  "[A] court can find the listing analysis sufficient by looking at the entire opinion."  *Johnson v. Comm'r of Soc. Sec.*, No. 13-CV-14797, 2015 WL 730094, at *26 (E.D. Mich. Feb. 19, 2015) (Friedman, J., *accepting and adopting the report and recommendation of* Morris, M.J.).

### c.   **Plaintiff's Step 3 arguments do not provide grounds for a Listing.**

Moreover, Plaintiff has not satisfied his burden to overturn the ALJ's Step 3 conclusion.  Plaintiff refers to "the treatment records provided by Clinton County Medical Center Psychological Services from 2016 through 2018" without record citation.  (ECF No. 13, PageID.1336.)  However, there are six exhibits of Clinton County Medical Center medical records, which seem to date from 2016 to 2019 and which total approximately 206 pages.  (Exhibits 4F, 7F, 12F, 16F, 19F & 22F.)  Thus, even if "it is clear that [he] has had PTSD for more than 2 years . . . [,]" his statement that "the PTSD is persistent even though symptoms were better and then

worse[,]" (*id.*), does not illustrate how his impairment meets Listing 12.15C1 or Listing 12.15C2.

Plaintiff's remaining points are unavailing. The ALJ's conclusion that his PTSD is severe at Step 2 does not necessarily mean it will be found to meet or equal Listing 12.15 at Step 3. (*Compare* 20 C.F.R. 404.1520(c), *with* 20 C.F.R. § 404.1520(d).) In the Sixth Circuit, "the severity determination is 'a *de minimis* hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Higgs*, 880 F.2d at 862. The test is used to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). However, the Step 2 severity analysis is simply a threshold determination. A finding of severity at Step 2 simply means that the ALJ may proceed to Step 3; it is not an indicator as to whether a Listing will be met.

Additionally, Plaintiff describes his Function Report (ECF No. 11, PageID.234-241) as "replete with instances of inability to sustain activities over time[,]" and his testimony (ECF No. 11, PageID.94-95, 97-100) as "consistent with limitations from PTSD." (ECF No. 13, PageID.1336.) He also cites testimony in support of his claims that his "activities have been lessened considerably by his

PTSD symptoms[,]" "he had contacted the VA in Michigan to restart therapy," and

"he continued to take his medication . . . that had been prescribed for PTSD and

anxiety – Zoloft and Xanax." (ECF No. 11, PageID.93-95, 97-99; ECF No. 16,

PageID.1373-1374.) Yet, Plaintiff's statement of error does not challenge the

ALJ's treatment of Plaintiff's symptoms "based on the requirements of 20 CFR

404.1529 and SSR 16-3p[,]" such as: (i) your daily activities; (ii) the location,

duration, frequency, and intensity of your pain or other symptoms; (iii)

precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side

effects of any medication you take or have taken to alleviate your pain or other

symptoms; (v) treatment, other than medication, you receive or have received for

relief of your pain or other symptoms; (vi) any measures you use or have used to

relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15

to 20 minutes every hour, sleeping on a board, etc.); and, (vii) other factors

concerning your functional limitations and restrictions due to pain or other

symptoms. (ECF No. 11, PageID.53.)[2]

In sum, Plaintiff has not shown error in the ALJ's Listing 12.15C

conclusions. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) ("a claimant has

---

[2] The Court declines Plaintiff's invitation to liken this case to *Richardson v. Heckler*, 750 F.2d 506, 507 (6th Cir. 1984) in the context of a Step 3 argument; although that decision involved PTSD, it did not involve a question of whether Plaintiff's impairment(s) met or equaled a listing.

the burden of demonstrating that her impairment meets or equals a listed

impairment."); *see also Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 817 (6th

Cir. 2020) ("the claimant bears the burden of offering evidence to establish

each element of the listing.") (citing *Foster*, 279 F.3d at 354).

### 2.    Mental RFC assessment

Plaintiff claims that the RFC does not consider the full impact of his PTSD

and anxiety, each of which the ALJ found to be severe at Step 2.  (ECF No. 13,

PageID.1337-1340.)  The ALJ determined that Plaintiff's RFC included exertional,

postural, and environmental limitations, as well as the ability "to perform simple,

routine, and repetitive tasks[,]" and "work in a low-stress environment without

frequent changes[,]" *i.e., understanding and memory, concentration and*

*persistence, and/or adaptation limitations*.  (ECF No. 11, PageID.53.)  Relatedly,

the RFC discussion noted:

- As for his mental health, the claimant is prescribed medication
  by his PCP and regularly reports it controls his symptoms.
  (13F/47, 16F, 22F).  He is no longer in counseling, but his
  symptoms were noted to be unchanged to improving when he
  was participating.  (4F, 7F, 12F, 19F).  In addition, his
  psychological consultative examination revealed the claimant to
  be pleasant and cooperative with normal memory,
  concentration, focus, insight, judgment, and fund of knowledge.
  (20F).  Despite his rather unremarkable mental status
  examinations, the claimant does have PTSD and anxiety, so he
  is limited to unskilled, low-stress work to help prevent
  exacerbation.  While the claimant clearly has some limitations
  due to his back, shoulder, and mental health, these are
  accommodated by the restrictions included in his RFC.  I

conclude that no further physical or mental limitations are
warranted.

•       The claimant's unremarkable psychological consultative
        examination and his reports that his medication controls his
        symptoms support the mental RFC provided.

•       This is consistent and supported by [the consultative
        examiner's] generally unremarkable examination of the
        claimant demonstrating within normal limits memory,
        knowledge, interaction, insight, judgment, and concentration.

•       He has had very limited mental health treatment with generally
        unremarkable mental status examinations.

(ECF No. 11, PageID.58-60.)  Indeed, Plaintiff concedes that the ALJ's

characterization of his mental status examinations as "rather unremarkable" is

"probably accurate[,]" but insists that this was only after he "began to stay home

and isolate from everyone except his wife."  (ECF No. 16, PageID.1375; *see also*

ECF No. 16, PageID.1373.)

        Plaintiff's mental RFC argument takes two forms.  First, Plaintiff appears to

argue that the ALJ's mental RFC assessment does not adequately account for the

VA's finding that he "is service connected for [PTSD] which is currently evaluated

at 50%[,]" (ECF No. 11, PageID.674; *see also id*., PageID.683, 734, 743, 753).

(ECF No. 13, PageID.1338.)  However, to the extent he relies upon his testimony

about panic attacks (ECF No. 11, PageID.99), the VE's testimony about

absenteeism (*id*., PageID.107), or the allegation that his "daily activities were

consistently limited by back pain and anxiety[,]" Plaintiff's statement of error does

not challenge the ALJ's treatment of Plaintiff's symptoms "based on the requirements of 20 CFR 404.1529 and SSR 16-3p[,]" (ECF No. 11, PageID.53). (ECF No. 13, PageID.1338-1339; ECF No. 16, PageID.1375.)  Plaintiff likens this case to *Hartman v. Colvin*, 954 F. Supp. 2d 618, 645 (W.D. Ky. 2013) (remanding to the Commissioner for further development of absenteeism.  (ECF No. 13, PageID.1339.)  However, providing a block quote from *Hartman* does not amount to a developed challenge to the ALJ's subjective symptoms discussion.

Second, Plaintiff argues that the ALJ's mental RFC assessment – limited to "simple, routine, and repetitive tasks" and "work in a low-stress environment without frequent changes" –  does not account for his "lack of ability to maintain concentration, persistence or keep pace[,]" or his "moderate limitations" with regard to concentrating, persisting or maintaining pace (CPP).  (ECF No. 11, PageID.52; ECF No. 13, PageID.1339-1340.)  Once again, to the extent Plaintiff relies upon his function report (ECF 11, PageID.234-241) or his testimony regarding concentration, focus and memory (ECF No. 11, PageID.102), he has not put forth a developed challenge to the ALJ's subjective symptoms determination, which found that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (ECF No. 11, PageID.54.)  Plaintiff likens his case to *Richardson,* arguing very broadly that, in *Richardson*, "a

longstanding PTSD was awarded disability benefits, and so should they be here[,]"

and, later in his brief, that "longstanding PTSD derived from combat trauma while

serving in the Army that has a severe effect on functioning equals SSA disability."

(ECF No. 13, PageID.1336, 1339.)  Yet, even though it involved PTSD,

*Richardson* involved medical evidence that "triggered the presumption of

continuing disability and placed the burden on the Secretary to produce evidence

that [the claimant's] condition has improved."  *Richardson*, 750 F.2d at 510.  If

Plaintiff intended to present such an argument, it is not clear and certainly not

developed; in any case, this portion of *Richardson* appears to have been abrogated

by the Social Security Disability Benefits Reform Act of 1984 and is also

inconsistent with the current version of 20 C.F.R. § 404.1504, which became

effective on March 27, 2017, as discussed *infra*.[3]  Plaintiff also claims the facts of

---

[3] *See Cutlip*, 25 F.3d at 286 n.1 ("As the Social Security Disability Reform Act of
1984 . . . eliminated any presumptions of disability, the magistrate judge erred in
finding a presumption of continuing disability pursuant to *Haynes v. Secretary of
Health & Human Servs.,* 734 F.2d 284, 288 (6th Cir.1984).  *See Crawford v.
Sullivan,* 935 F.2d 655, 656 (4th Cir.1991); *Kaliardos v. Secretary of Health &
Human Servs.,* No. 88–1218, 1989 WL 25795, at *2 …(6th Cir. Feb. 27, 1989) . . .
(unreported); *Soper v. Heckler,* 754 F.2d 222, 224 n. 1 (7th Cir.1985).  Since the
enactment of the Social Security Disability Reform Act of 1984, there have been
opinions in this circuit recognizing the presumption of continuing disability as
stated in *Haynes*, 734 F.2d at 288, but they have failed to address the clear conflict
between such a presumption and the statutory language in § 423(f).  *See Perket v.
Secretary of Health & Human Servs.,* 905 F.2d 129, 131 (6th Cir.1990); *Walker v.
Secretary of Health & Human Servs.,* 884 F.2d 241, 244–45 (6th Cir.1989);
*Harmon v. Secretary of Health & Human Servs.,* 749 F.2d 357, 359 (6th
Cir.1984).").

his case are similar to those in *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269 (6th Cir. 2010).  (ECF No. 16, PageID.1376.)  (ECF No. 16, PageID.1376.)  Yet, this appeal does not involve the "SSR 96–5p Recontact Requirement" or "Remand for Consideration of New Evidence."  *Ferguson*, 629 F.3d at 271-278.

Plaintiff relies upon *Eiseler v. Barnhart*, 344 F. Supp. 2d 1019, 1029 (E.D. Mich. 2004) ("Courts have found that hypotheticals limiting a worker to "unskilled work" have not been sufficient to accommodate certain psychological limitations.")[4] and *Benton v. Comm'r of Soc. Sec.*, 511 F. Supp. 2d 842, 849 (E.D. Mich. 2007) ("the limitations included in the hypothetical question and the VE's testimony regarding the effect a lack of concentration has on the jobs mentioned was insufficient to suitably accommodate Plaintiff's concentration limitations.") in support of his arguments that "a hypothetical question that limited a claimant to unskilled work does not adequately describe the limitations resulting from the claimant's severe depression[,]" "[t]he same principle holds for the effects of

---

[4] The Commissioner takes issue with the applicability of this case, based on the fact that the RFC in *Eiseler* limited the claimant to unskilled work, whereas no such limitation was assigned here (ECF No. 15, PageID.1366), although it appears that the jobs offered by the VE that support the ALJ's Step 5 determination – *i.e.*, office helpers (DOT 239.567-010), routers (DOT 222.587-038), and inspector and hand packagers (DOT 559.687-074) – are unskilled (ECF No. 11, PageID.61, 105-106).  While it may be true that the RFC itself and the hypothetical posed to the VE use only "low-stress," (*id.*, PageID.53, 105), the ALJ's RFC determination *explanation* further expounds by referencing "unskilled, low-stress work to help prevent exacerbation[,]" (ECF No. 11, PageID.58).

PTSD . . . [,]" and that "the ALJ's failure to include moderate deficiencies of concentration, persistence and pace in a hypothetical question renders the question flawed and the VE's testimony in response to a flawed hypothetical is not substantial evidence." (ECF No. 13, PageID.1340.) *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) ("The ALJ's streamlined hypothetical omitted these speed- and pace-based restrictions completely."). Yet, the ALJ's RFC determination specifically states: (1) "Moderate limitations in concentrating, persisting, or managing pace limits him to performing simple, routine, and repetitive tasks; and work in a low-stress environment without frequent changes[;]" and, (2) "Despite his rather unremarkable mental status examinations, the claimant does have PTSD and anxiety, so he is limited to unskilled, low-stress work to help prevent exacerbation." (ECF No. 11, PageID.58.) Thus, the ALJ's accounting for the moderate limitations in CPP is clear. *Bellman v. Comm'r of Soc. Sec.*, No. CV 18-10872, 2019 WL 1521994, at *8 (E.D. Mich. Mar. 20, 2019) (Grand, M.J.) ("Because there is no bright-line rule requiring an ALJ to account for moderate limitations in CPP in a certain way, the Court must – given the particular evidence in the case at hand – determine whether the limitations imposed by the ALJ adequately accounted for the claimant's moderate restriction in CPP."), *report and recommendation adopted*, No. 18-10872, 2019 WL 1515258 (E.D. Mich. Apr. 8, 2019) (Ludington, J.).

Moreover, as the Commissioner points out, the state agency medical consultant opined that Plaintiff is "is able to perform simple/routine tasks on a sustained basis in [a] low stress environment with out [sic] frequent changes[,]" (ECF No. 11, PageID.124-131), and the CE report notes that Plaintiff's "ability to perform repetitive, routine simple tasks is within normal limits[,]" (*id.*, PageID.1272). (ECF No. 15, PageID.1365.) Thus, the ALJ's conclusions in this regard are supported by substantial evidence. Furthermore, the RFC is consistent with the hypothetical posed to the VE. (ECF No. 11, PageID.104-105.) In sum, Plaintiff's claim that the mental RFC is an "inadequate limitation [for] [his] PTSD symptoms" does not illustrate error in the ALJ's decision. (ECF No. 13, PageID.1340.)

### 3.    Evidence from the VA Medical Center

Plaintiff claims that the ALJ "committed legal error in not considering and addressing the *underlying and supporting* evidence which supported the VA's finding of 70% disability." (ECF No. 13, PageID.1340-1344 (emphasis added).) There are approximately 176 pages of records from the VA Medical Center, dated October 2013 through March 2018. (ECF No. 11, PageID.400-447 [Ex. 2F], 659-786 [Ex. 10F].) The ALJ considered records within these exhibits throughout the decision. (*See*, *e.g.*, ECF No. 11, PageID.50-52, 54-55, 58-59.)

The 70% figure to which Plaintiff refers appears to be the December 2013 and March 2018 determinations that Plaintiff's PTSD was 50% service connected, his tinnitus was 10% service connected, and his degenerative arthritis of the spine was 10% service connected.  (ECF No. 11, PageID.411 [Ex. 2F], 663 [Ex. 10F].)  However, as the Commissioner points out:  "Calculating your combined disability rating involves more than adding up your individual ratings. That's why your combined rating may be different from the sum of your individual ratings."  *See* https://www.va.gov/disability/about-disability-ratings/ (last visited Aug. 20, 2021). (*See also* ECF No. 15, PageID.1367 n.6.)  In fact, the VA calculated Plaintiff's Service Connection (SC) percent as 60%.  (ECF No. 11, PageID.411, 663.)

More to the point, Plaintiff's argument is unavailing.  First, Plaintiff filed the DI application at issue in this appeal on February 25, 2019.  (ECF No. 11, PageID.215.)  As for "[d]ecisions by other governmental agencies and nongovernmental entities[,]" the SSA's regulations provide:

> . . . in claims filed (see § 404.614) on or after March 27, 2017, *we will not provide any analysis* in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).

20 C.F.R. § 404.1504 (emphasis added).  Thus, ALJ Blatnik was not required to

accept the VA's 60% SC findings.[5]  Second, within this argument, Plaintiff relies

upon:

- The December 18, 2013 notes from a telephone session with psychologist Amy L. Karbasi, Psy.D., which contain Plaintiff's responses to a 17-point PTSD Checklist (PCL) (ECF No. 11, PageID.425-426 [Ex. 2F]);

- The June 14, 2016 psychological evaluation report by Jessica Charron, Psy.D./L.P., who observed blunted affect, negative self-concept, and anxious mood; noted Plaintiff "was visibly anxious and hypervigilant but became more relaxed once in the therapy room[,]" and further noted:  "his concentration was normal.  His affect expression was blunted and flat, and his mood was apprehensive, depressed, agitated, and frustrated.  He appeared highly distressed, but was still cooperative during the pretesting and testing sessions.  Based on behavioral observations the results of this evaluation are believed to be valid[,]" (ECF No. 11, PageID.546 [Ex. 7F]); and,

- The May 23, 2017 report of psychiatrist Frank Ochberg, M.D., who noted, *inter alia*:  " His military PTSD combined with images and sensations related to this work-place trauma.  These are still present, including nightmares, unwanted memory of carnage in Iraq, extreme physical and emotional reaction to "triggers" (reminders of traumatic events), avoidance of all previously enjoyable social events, deep sadness, loss of confidence, constant irritability, episodes of rage, and

---

[5] Even under the prior regulations, all that was required of the Commissioner with respect to VA or other agencies' disability determinations was to "consider" them. *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 510 (6th Cir. 2013) (given a 100% disability rating by the VA in 1987, stating the VA's disability rating is entitled to consideration, but the ALJ is not bound by it); *Mason v. Comm'r of Soc. Sec.*, No. 15-14300, 2017 WL 1018148, at *2 (E.D. Mich. Mar. 16, 2017) ("the ALJ properly considered the VA records and the disability rating, referenced both in his decision, yet is not bound by the VA's determination.").

> impairment of concentration, sleep and intimacy.  His faith and
> his love of his wife remain[,]" (*id*., PageID.448 [Ex. 3F]).

(ECF No. 13, PageID.1343-1344.)  Yet, each is dated outside the relevant period,

*i.e.*, Plaintiff's October 1, 2017 alleged AOD through ALJ Blatnik's February 12,

2020 decision.  And, in any event, the ALJ expressly stated:

> The claimant participated in therapy from 2016 through June 2018.
> His treatment notes during this time note unchanged to improving
> symptoms.  (4F, 7F, 12F, 19F).  He was diagnosed at the VA with
> PTSD.  (2F).  The claimant also had a one-time evaluation by an
> independent psychiatrist, prior to the alleged onset date, in March
> 2017, who also diagnosed him with PTSD.  I note this report also
> discussed a toxic fume event while the claimant was working in 2015,
> and how this has effected the claimant.  (3F).  However, this is not
> entirely consistent with the record, as the claimant was able to
> continue working two years after the event, his pulmonary records are
> generally normal, and the chemical he was exposed to has no evidence
> of chronic issues.  (6F; 15F/9, 11).  During the relevant time period,
> there is no further mention of this event or its effects on the claimant.

(ECF No. 11, PageID.54.)  Thus, as for the records upon which Plaintiff relies, it is

clear the ALJ cited Dr. Ochberg's report (Ex. 3F), albeit without attribution, even

if the ALJ's references to Exhibits 7F and 2F are less discernable.  Indeed, the ALJ

is not obligated to expressly mention each piece of evidence.  *Bailey v. Comm'r of*

*Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011) (an ALJ "is not required to

analyze the relevance of each piece of evidence individually.  Instead, the

regulations state that the decision must contain only 'the findings of facts and the

reasons for the decision.'") (quoting 20 C.F.R. § 404.953).

Third, Plaintiff makes a weight-based argument.  He contends that the ALJ "seems to place far *too much empha[s]is* on the fluctuating nature of plaintiff's fluctuating PTSD symptoms of mood rather than all the facts relied upon by [the] VA to determine Mr. Fulkerson was 70% service related disabled[,]" and claims that "[h]ad all of the tested for symptoms been considered, [he] would have been found disabled."  (*Id*., PageID.1343-1344 (emphasis added).)  Similarly, in his reply, he contends that the VA records and opinions "clearly demonstrate a 70% disability that should have been given *substantially more weight* than they were." (ECF No. 16, PageID.1376 (emphasis added).)  Yet, the ALJ expended two paragraphs reviewing Plaintiff's March 2018 application for VA benefits.  (ECF No. 11, PageID.55, 663-680.)  The ALJ again mentioned the March 2018 records when discussing "[t]he inconsistencies between the claimant's statements and the rest of the medical evidence . . . ."  (ECF No. 11, PageID.58.)  Further, when reviewing the opinion evidence, the ALJ was persuaded by several opinions – namely those of state agency medical consultant B.D. Choi, M.D., state agency psychological consultant Jerry Csokasy, Ph.D., and CE John Jeter, M.A. / Hugh Bray, Ph.D. – and explained:

> I did not analyze any disability decisions by other governmental agencies or statements on issues reserved to the Commissioner (including statements that a claimant is disabled or able to work), because, under 20 CFR 404.1520b(c), this evidence is not inherently valuable or persuasive.  However, I did consider all available evidence underpinning those determinations and statements.

(ECF No. 11, PageID.59.)  In sum, Plaintiff has not shown error in the ALJ's

treatment of the VA's December 2013 and March 2018 determinations, and this

Court's "task is not to reweigh the evidence. That is solely the province of the

Secretary." *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir.

1982) (citing *Wokojance v. Weinberger*, 513 F.2d 210 (6th Cir. 1975)).

### F.    Conclusion

In sum, Plaintiff has not satisfied his burden to overturn the ALJ's

conclusions at Step 3, within the RFC assessment, or otherwise.  *Walters,* 127 F.3d

at 529.  Accordingly, as detailed in the foregoing discussion, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment or remand (ECF No. 13), **GRANT** Defendant's cross-motion for

summary judgment (ECF No. 15), and **AFFIRM** the Commissioner's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days after being

served with a copy, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

25

party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after being served with a copy of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  August 21, 2021

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE